UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------ X

SAAED MOSLEM,

     **Third Party Plaintiff,**

     - against -

PARIETTI & MCGUIRE INSURANCE
AGENCY and DOUGLAS PARIETTI,
individually and in his capacity as an
Officer, Agent or Manager of Parietti &
McGuire Insurance Agency,

     **Third Party Defendants.**

------------------------------------------------ X

**OPINION AND ORDER**

**07 Civ. 7962 (SAS)**



**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

     Third-party plaintiff Saaed Moslem ("Moslem" or "plaintiff") seeks damages, as well as indemnification and/or contribution, from third-party defendants Parietti & McGuire Insurance Agency ("P & M") and Douglas Parietti ("Parietti") claiming that because they mishandled the procurement of his homeowner's insurance policy, they should be liable for any uncompensated fire damage to the property. Specifically, Moslem asserts the following causes of action against P & M and Parietti (collectively, "defendants"): (1) negligence; (2)

indemnity and/or contribution; (3) negligent misrepresentation; (4) breach of implied contract; and (5) fraud and fraudulent concealment. Pursuant to Federal Rule of Civil Procedure 56, defendants now move for summary judgment. For the reasons set forth below, defendants' motion is granted in its entirety.

## II.   BACKGROUND[1]

P & M is a licensed insurance agent and broker in the state of New York.[2] Parietti is the sole owner of the company, as well as its President.[3] P &M offers policies from the Vermont Mutual Insurance Company ("Vermont Mutual").[4]

In June 2005, Moslem purchased a single family house at 2276 Route 302 in Middletown, New York (the "Property").[5] At that time, he insured the

---

[1]    All facts are drawn from the parties' Local Rule 56.1 Statements, affidavits, and exhibits, and are undisputed unless otherwise noted.

[2]    *See* Third-Party Defendants' Rule 56.1 Statement of Undisputed Facts ("Def. 56.1") ¶ 1; Third-Party Plaintiff's Rule 56.1 Counter-Statement of Undisputed Facts ("Pl. 56.1") ¶ 1.

[3]    *See* Def. 56.1 ¶ 2; Pl. 56.1 ¶ 2. According to Parietti's description, his job entails "plac[ing] insurance on risks" by connecting parties interested in obtaining insurance with relevant providers. Deposition of Douglas Parietti, Ex. F to Declaration of Joseph Churgin, Plaintiff's Counsel, in Opposition to Defendants' Motion for Summary Judgment ("Churgin Decl.") at 8:21-24.

[4]    *See* Def. 56.1 ¶ 3; Pl. 56.1 ¶ 3.

[5]    *See* Def. 56.1 ¶ 4; Pl. 56.1 ¶ 4.

2

Property with a policy from Foremost Insurance Company (the "Foremost Policy").[6] On or about January 6, 2006, Moslem listed the Property for sale but continued to live in the house.[7] In early June 2006, with the Foremost Policy about to expire, Moslem contacted P & M to request a quote for a homeowners's policy covering the Property.[8] Moslem spoke with Parietti, who asked him various questions to ensure that he was eligible for homeowner's insurance and to determine the appropriate policy rates.[9] Based on their conversation, Parietti believed that Moslem had just purchased the Property and was planning to use it as his primary residence, thereby qualifying him for homeowner's insurance.[10]

Parietti used the information he learned during their discussion to

---

[6]     *See* Def. 56.1 ¶ 5; Pl. 56.1 ¶ 5.

[7]     *See* Def. 56.1 ¶ 6; Pl. 56.1 ¶ 6.

[8]     *See* Def. 56.1 ¶ 7; Pl. 56.1 ¶ 7.

[9]     *See* Def. 56.1 ¶ 8; Pl. 56.1 ¶ 8.

[10]    *See* Def. 56.1 ¶¶ 9-10; Pl. 56.1 ¶ 10.  The parties disagree about what was said during their discussion.  Parietti states that Moslem told him that "he was newly purchasing the premises and would be living there."  Affidavit of Douglas Parietti in Support of Defendants' Motion for Summary Judgment ("Parietti Aff.") ¶ 9.  In contrast, Moslem contends that he informed Parietti that he had owned the house for some time and was currently living there, but denies "[telling] Parietti what he would be doing in the future."  Pl. 56.1 ¶ 9.  In any event, the parties agree that Parietti somehow developed an impression Moslem had just purchased the Property to serve as his primary home, and that this information was reflected in the completed application submitted to Vermont Mutual.

3

complete portions of Moslem's homeowner's insurance application to Vermont Mutual.[11]  On June 14, 2006, Parietti met with Moslem to review the completed homeowner's insurance application.[12]  The finalized application, dated that same day, indicated that Moslem was the owner of the house, that he occupied the premises daily, that the house was to be used as a primary dwelling, and that the house was not for sale.[13]  It also noted that the house was a new purchase, and that any questions about prior policies were therefore inapplicable.[14]  The application contained a warning that insurance benefits may be denied upon the submission of

---

[11]     See Parietti Aff. ¶ 6.  As part of the application process, Parietti visited the Property to take photographs.  The Property was still listed for sale at this time, and a photograph showing a "For Sale" sign in front of the house was submitted with the insurance application to Vermont Mutual.  See Def. 56.1 ¶¶ 20, 44; Pl. 56.1 ¶¶ 20, 44.   Parietti states that he "did not know the property was for sale and assumed the sign was still up because Moslem had not yet closed on the house."  Def. 56.1 ¶ 44.

[12]     See Def. 56.1 ¶ 11; Pl. 56.1 ¶ 11.  Moslem states that he did not review all of the responses, that some of the questions had been left blank, and that Parietti did not fill in any of the missing responses in his presence.  See Pl. 56.1 ¶ 12.  However, to the extent that the responses were typed — as all of the answers regarding the use of the house as a dwelling were — Moslem unquestionably had the opportunity to review them before signing off on the document.

[13]     See Moslem's Completed Homeowner Application for Vermont Mutual ("Vermont Mutual App."), Ex. 1 to Parietti Dec.   This information was typed on the form.

[14]     See id.  The part of the form indicating that the house was a new purchase and did not have prior policies in effect was hand-written.

4

false information, and required applicants to specifically attest that they had read

the application in its entirety and believed the information contained therein to be

complete and correct.[15]  Moslem signed the application without asking Parietti to

make any changes to the document.[16]

On June 22, 2006, Vermont Mutual approved a homeowner's policy

in Moslem's name for the period between June 22, 2006 through June 22, 2007

("Vermont Mutual Policy").  The Declarations page of the policy summarized its

terms, and noted that "the residence premises covered by this property is located at

2276 Route 302" and that the limit of liability for the "dwelling" is $350,000.[17]

The policy sets forth the definition of "residence premises" — *i.e.*, the "insured

location" covered by the policy — as "[t]he one family dwelling, other structures,

and grounds . . . where [the named insured] reside[s] and which is shown as the

---

[15]     *See id.* (setting forth the following "Applicant Statement" right above
the signature box: "I have read the above application and any attachments.  I
declare that this information in them is true, complete and correct to the best of my
knowledge and belief.  This information is being offered to the company as an
inducement to issue the policy for which I am applying.").

[16]     *See* Def. 56.1 ¶ 16; Pl. 56.1 ¶ 16.  *See also* Deposition of Saaed
Moslem ("Moslem Dep."), Ex. E to Churgin Decl. at 25:11-14.

[17]     Vermont Mutual Policy, Ex. E to Declaration of Nancy Quinn Koba,
Defendants' Counsel, in Support of Their Motion for Summary Judgment ("Koba
Decl.") at Declarations Page.

'residence premises' in the Declarations."[18]  The "dwelling" covered by the policy

is defined as "the dwelling on the 'residence premises' shown in the

Declarations."[19]  The rating information for the policy noted that it was a "primary

residence" occupied by the owner of the premises.[20]  The policy also noted that it

would be entirely "void if, whether before or after a loss, an 'insured' has . . .

[m]ade false statements[] relating to this insurance."[21]

       In a letter dated August 7, 2006, Parietti informed Moslem that the

Vermont Mutual Policy had been issued in accord with his requested coverage and

limits.[22]  Parietti attached the Vermont Mutual Policy to the letter, and told Moslem

to "[p]lease look this policy over and make sure that all of the information is

correct.  If anything needs to be changed it is your responsibility to contact us

immediately."[23]  The letter instructed Moslem to "[r]ead your policy and become

aware of the coverages afforded by it.  Remember that we are here to answer any

---

[18]     *Id.* at 1.

[19]     *Id.* at 2.

[20]     *Id.* at Rating Information Page.

[21]     *Id.* at 15.

[22]     *See* 8/7/09 Letter from Parietti to Moslem, Ex. 3 to Parietti Aff.

[23]     *Id.*

questions you may have regarding coverages."[24]  Moslem signed the letter on the

bottom to acknowledge receipt of the policy.[25]  He did not contact P & M with any

objections or questions upon receiving the letter or the annexed Vermont Mutual

Policy.[26]

   Moslem vacated the Property sometime in the first half of 2006 and

began leasing it in July without informing anyone at P & M or Vermont Mutual.[27]

On October 8, 2006, the Property was destroyed by fire.[28]  Moslem subsequently

filed a claim for property damage under the Vermont Mutual Policy but was denied

coverage by letter dated September 12, 2007, which advised him that "due to

material misrepresentations in his application for insurance the homeowner's policy

was *void ab initio*."[29]  Specifically, during the course of its investigation into the

---

[24]  *Id.*

[25]  *See id.*

[26]  *See* Def. 56.1 ¶ 27; Pl. 56.1 ¶ 27.

[27]  *See* Def. 56.1 ¶¶ 28-29; Pl. 56.1 ¶¶ 28-29.  *Accord* Moslem Dep., Ex. B to Reply Declaration of Nancy Quinn Koba in Support of Defendants' Motion for Summary Judgment at 29:21-30:20.

[28]  *See* Def. 56.1 ¶ 32; Pl. 56.1 ¶ 32.

[29]  *See* Def. 56.1 ¶¶ 32-33; Pl. 56.1 ¶¶ 32-33.  *Accord* Deposition of Donna Meledy, Vermont Mutual Representative, Ex. A to Koba Decl. at 109:17-21 (testifying that she could not "describe any facts or events which [she] believe[s] [P & M] should have done in relation to [Moslem's] application that they didn't do according to [Vermont Mutual's] instruction").

fire, Vermont Mutual discovered the following inaccuracies in Moslem's application: (1) "at the time of the Homeowner's Application, the Premises was a new purchase;" (2) "there was no prior insurance, and thus no prior policy number;" (3) "Moslem has no other residence owned, occupied or rented;" and (4) "the Premises were not for sale."[30]  Vermont Mutual found that these representations "were material to the risk to be insured since, had Vermont Mutual known the true state of facts, it would have led to a refusal by Vermont Mutual to issue the Policy."[31]

Accordingly, Vermont Mutual sued Moslem, asserting that it "is entitled to judgment rescinding the Policy, declaring it null and *void ab initio*, and ordering Moslem to surrender the Policy to Vermont Mutual for cancellation."[32]  In response, Moslem filed a third party claim against Parietti and P & M.

## III.   APPLICABLE LAW

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of

---

[30]     Complaint  ("Compl."), Ex. A to Third Party Complaint ("Third Party Compl.") ¶ 9.

[31]     *Id.* ¶ 16.

[32]     *Id.* ¶ 18.

law."[33]  "'An issue of fact is genuine if the evidence is such that a reasonable jury

could return a verdict for the nonmoving party.  A fact is material if it might affect

the outcome of the suit under the governing law.'"[34]  "[T]he burden of

demonstrating that no material fact exists lies with the moving party . . . ."[35]  In

determining whether a genuine issue of material fact exists, the court must

"constru[e] the evidence in the light most favorable to the non-moving party and

draw all reasonable inferences" in that party's favor.[36]

## IV.   DISCUSSION

Moslem argues that defendants are liable for any misrepresentations

on the homeowner's insurance application, and brings five causes of action against

them to recover damages incurred by Vermont Mutual's rejection of the Policy:

(1) negligence; (2) indemnity and/or contribution; (3) negligent misrepresentation;

(4) breach of implied contract; and (5) fraud and fraudulent concealment.  In

support of his claims, Moslem asserts that he supplied defendants with complete

and truthful information in response to their queries, that they assured him that the

---

[33]     Fed. R. Civ. P. 56(c).

[34]     *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir.
2009) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008)).

[35]     *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008).

[36]     *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009).

information that he provided was adequate and sufficient, and that he relied upon

them to ensure that his insurance application was accurate and the resulting policy

valid.[37]

## A.    Negligence

"[A]n agent or broker may be held liable for neglect in failing to

procure insurance, with liability limited to that which would have been borne by

the insurer had the policy been in force."[38]  It is undisputed that the Vermont

Mutual Policy covered Moslem's current residence, and that Moslem did not reside

in the house at the time of the fire.  Thus, applying the "clear and unambiguous"

terms of the policy, Vermont Mutual was not obligated to compensate Moslem for

the damage incurred by the fire.[39]

---

[37]    *See generally* Third Party Compl.

[38]    *Milgrim v. Royal & Sunalliance Ins. Co.*, 75 A.D.3d 587, 589 (2d
Dept. 2010) (quotation marks and citation omitted).  *Accord Andriaccio v. Borg &
Borg*, 198 A.D.2d 253, 253 (2d Dept. 1993) ("A broker who negligently fails to
procure a policy stands in the shoes of the insurer, and is liable to indemnify the
plaintiff for any judgment which would have been covered by the policy.")
(citation omitted).

[39]    *Raino v. Navigators Ins. Co.*, 268 A.D.2d 419, 419-420 (2d Dept.
2000) ("[T]he construction of terms and conditions of an insurance policy that are
clear and unambiguous presents a question of law to be determined by the court
when the only issue is whether the terms as stated in the policy apply to the
facts.").  In *Marshall v. Tower Ins. Co. of New York*, the court interpreted
language identical to that used in the Vermont Mutual Policy to preclude recovery
by a plaintiff who did not live in the location identified as his primary residence

10

Because defendants can only be liable to the same extent as the

insurer, Moslem's negligence claim necessarily fails for lack of proximate cause,

as he cannot demonstrate that defendants' actions caused his injuries.[40] In other

words, even assuming that defendants were negligent in procuring the policy, "and,

thus, were required to pay the plaintiff what [he] would have received from [his]

insurance company had the requested insurance policy been issued, they would not

---

under his homeowner's insurance policy:

> The provisions at issue in the instant policy are not ambiguous. The policy defines the insured location as, inter alia, the "residence premises." The term "residence premises" is defined as follows: "8. 'Residence premises' means: a. The one family dwelling . . . where you reside and which is shown as the 'residence premises' in the Declarations." . . . As the parties do not dispute that the plaintiff, the named insured under the policy, did not reside at the subject premises, the defendant [insurer] properly concluded that the subject premises were not covered under the policy and properly disclaimed on that basis.

44 A.D.3d 1014, 1015 (2d Dept. 2007). *Accord Metropolitan Property & Cas. Ins. Co. v. Pulido*, 271 A.D.2d 57, 60 (2d Dept. 2000) (holding that homeowner's policy identifying the insured premises as the "residence premises" could not "be read to provide coverage to a location where the insured did not reside, even if they owned such premises").

[40]   *See Milgrim*, 75 A.D.3d at 589 (holding that even if defendant insurance broker negligently failed to procure proper homeowner's insurance, he was not the proximate cause of plaintiff's damages because the insurer properly disclaimed coverage for fire damage on the grounds that plaintiff did not reside in the premises on the date of the fire).

11

have to pay the plaintiff any damages, as the plaintiff's insurable interest under that policy would have been extinguished."[41]  Accordingly, Moslem's negligence claim must be dismissed.

### B.    Negligent Misrepresentation and Fraudulent Concealment

"Insurance agents generally are not liable for anything more than obtaining the requested coverage, unless there is a special relationship with the insurance customer justifying reliance on the agent's speech."[42]  Thus, in order to sustain a claim for either negligent misrepresentation or fraudulent concealment, Moslem would have to demonstrate the existence of a special relationship with defendants and a reasonable reliance on information that they provided or should

---

[41]    *730 J & J, LLC v. Fillmore Agency, Inc.*, 22 A.D.3d 741, 805 (2d Dept. 2005) (affirming summary judgment in favor of insurance brokers who may have been negligent in procuring insurance for plaintiff, because plaintiff could not have recovered under the policy).

[42]    *Curanovic v. New York Cent. Mut. Fire Ins. Co.*, 307 A.D.2d 435, 437 (3d Dept. 2003) (holding that insurance agent was not liable for negligent misrepresentation for the inaccuracies in plaintiff's homeowner's insurance application, because there was no special duty between the parties arising out of their limited business together and because plaintiff had an independent duty to correct inaccuracies in the application"). *Accord Kimmell v. Schaefer*, 89 N.Y.2d 257, 263 (1996) ("[L]iability for negligent misrepresentation has been imposed only on those persons who possess unique or specialized expertise, or who are in a special position of confidence and trust with the injured party such that reliance on the negligent misrepresentation is justified.").

have provided.[43]  Moslem cannot make either of these showings.

First, Moslem fails to allege any facts creating an "exceptional

situation" that would justify departure from the usual judicial "disfavor" for

finding a special relationship between two parties.[44]  Moslem had no more than a

few interactions with defendants in the course of their cursory business dealings to

obtain the policy, and — despite defendants' invitation to do so — never contacted

them with any questions or concerns regarding his policy.  As such, theirs was

"akin to a normal insurance agent/customer relationship" insufficient to give rise to

---

[43]      See Mandarin Trading Ltd. v. Wildenstein, — N.E.2d —, 2011 WL
445634 (N.Y. Feb. 10, 2011) (noting that in a cause of action for fraudulent
concealment, in addition to an allegation that the defendant had a duty to disclose
material information and that it failed to do so, "a plaintiff must allege a
misrepresentation or a material omission of fact which was false and known to be
false by defendant, made for the purpose of inducing the other party to rely upon it,
justifiable reliance of the other party on the misrepresentation or material omission,
and injury"); J.A.O. Acquisition Corp. v. Stavitsky, 8 N.Y.3d 144, 148 (2007) ("A
claim for negligent misrepresentation requires the [claimant] to demonstrate (1) the
existence of a special or privity-like relationship imposing a duty on the defendant
to impart correct information to the [claimant]; (2) that the information was
incorrect; and (3) reasonable reliance on the information.").

[44]      Curanovic, 307 A.D.2d at 438.  Accord Silvers v. State, 68 A.D.3d
668, 669 (1st Dept. 2009) (noting that an "arm's-length business relationship, such
as that between [an insurance] claimant and the [insurance company's] field
representative, is not generally considered to be of the sort of a confidential or
fiduciary nature that would support a cause of action for negligent
misrepresentation").

13

a special duty.[45]

Second, and more fundamentally, Moslem cannot demonstrate justifiable reliance resulting in injury because, by signing the insurance application before it was submitted, he independently affirmed any misrepresentations or omissions therein. Moslem "must be held to have conclusive presumptive knowledge that the insurance policy . . . covered [a *residence* premises], because such terms were clearly detailed in the policy."[46] Thus, he was aware that he was acting contrary to the terms of the policy, both when he signed the application indicating that the Property was his primary residence  and when he subsequently vacated the Property (and leased it) without informing Vermont Mutual or defendants.  Because Moslem had independent knowledge of the alleged misrepresentations in the homeowner's insurance application and of their potential consequences, he cannot claim to have justifiably relied on defendants' statements or omissions in losing coverage under the policy.

Moslem nonetheless argues that defendants are liable for the losses he

---

[45]     *Curanovic*, 307 A.D.2d at 438.

[46]     *McLaughlin v. Nationwide Mut. Fire Ins. Co.*, 8 A.D.3d 739 (3d Dept. 2004) (finding "merit to [insurer's] contention that the insurance policy contained material misrepresentations which warranted rescission" where the premises destroyed by fire were unoccupied, contrary to plaintiff's representation on his application that they were owner-occupied").

sustained as a result of the fire because "[i]f Parietti and P & M had properly reflected the true answers to the questions [on the Vermont Mutual application], Vermont [Mutual] would not be claiming that the policy was *void ab initio*."[47] Moslem asserts that he did not read the insurance application in its entirety, and that any misrepresentations in the document were generated by Parietti.[48] However, even assuming that Moslem played no role in supplying the false information incorporated in the insurance application, he remains liable for the misrepresentations on the final document because he had an independent obligation to verify the insurance application before it was submitted. Under New York law,

> [t]he signer of a contract is conclusively bound by it regardless of whether he or she actually read it . . . An insured cannot remain silent while cognizant that his insurance application contains misleading or incorrect information but has a duty to review the entire application and to correct any incorrect or incomplete answers.

---

[47]    Third-Party Plaintiff's Memorandum in Opposition to Third-Party Defendants' Motion for Summary Judgment ("Pl. Mem.") at 10.

[48]    To the extent that Moslem argues that there is a material issue of fact regarding whether defendants altered his application after he signed it, I cannot credit his assertion absent any supporting evidence — particularly since the critical aspects of the application indicating that the Property would be Moslem's primary residence were *typed* on the form and were thus necessarily completed before he signed it. In any event, because Moslem failed to contact defendants or Vermont Mutual about the misrepresentations after he received the final policy — despite defendants' explicit invitation to do so — he cannot defeat summary judgment by arguing that defendants inserted falsehoods into the application after he had the opportunity to review it.

15

> Whether or not plaintiff intended to provide inaccurate statements or misrepresentations at the time he filled out the application is irrelevant, as he was bound by those answers and swore to their accuracy by signing the application.[49]

In other words, that the misrepresentations in the Vermont Mutual application may have been initially inserted by defendants does not help Moslem's claims, because his own conduct was instrumental in bringing about the harm he sustained. It is undisputed that Moslem in fact signed the application, and thus effectively endorsed the misrepresentations and made them his own.[50]  Moslem cannot seek legal protection from the consequences of his own culpable or negligent acts in submitting the Vermont Mutual Policy.

### C.    Indemnification and/or Contribution

Moslem's primary argument in opposition to defendants' motion to

---

[49]    *Curanovic*, 307 A.D.2d at 437 (holding that "[w]hether or not plaintiff [who could not understand English] intended to provide inaccurate statements or misrepresentations at the time he filled out [his insurance] application is irrelevant, as he was bound by those answers and swore to their accuracy by signing the application although he knew he could not read it") (quotation marks and citation omitted). *Accord North Atlantic Life. Ins. Co. of America v. Katz*, 163 A.D.2d 283, 284 (2d Dept. 1990) (holding that an insurance policy was justifiably rescinded where the insured did not comply with his "duty to review the entire application and to correct any incorrect or incomplete answers").

[50]    *Curanovic*, 307 A.D.2d at 437. *Accord Precision Auto Accessories, Inc. v. Utica First Ins. Co.*, 52 A.D.3d 1198, 1201 (4th Dept. 2008) (holding that plaintiff was bound by misrepresentations in his insurance application, even if they were the result of the negligence of his or defendant's agents).

to dismiss his implied indemnity and/or contribution claims is that "[i]t is impossible to determine the liability of a party for indemnification and/or contribution, when the underlying claim has not been resolved."[51]  Contrary to Moslem's assertion, however, Vermont Mutual's claims against Moslem preclude recovery against defendants under either theory as a matter of law.

Indemnification and contribution are only available in *damages* actions, "[w]hen two or more persons are or may be liable for the same harm and one of them *discharges the liability of another* in whole or in part by settlement or discharge of judgment."[52]  Here, Vermont Mutual seeks *rescission and cancellation* of the policy based on Moslem's breach of his *independent duty* to ensure the accuracy of his homeowner's insurance application.  Any acts or omissions by P & W or Parietti are irrelevant to Vermont Mutual's claim against him, and would not offset Moslem's own culpability for material

---

[51]     Pl. Mem. at 13.

[52]     Restatement (Third) of Torts § 23 (emphasis added).  *Accord Mas v. Two Bridges Assoc. by Nat. Kinney Corp.*, 75 N.Y.2d 680, 691 (1990) ("[I]n contribution, the tort-feasors responsible for plaintiff's loss share liability for it . . . In indemnity . . . a party held legally liable to plaintiff shifts the entire loss to another . . . The purpose of all contribution and indemnity rules is the equitable distribution of the loss occasioned by multiple defendants."); *Trump Village Section 3, Inc. v. New York State Housing Fin. Agency*, 307 A.D.2d 891, 895-96 (1st Dept. 2003) (noting that codefendants seeking contribution must plead "predicate tort liability upon which their claims may be based").

misrepresentations in the application.  Should Vermont Mutual prevail in its action against Moslem and attain the declaratory relief it seeks, defendants would have no liability to Vermont Mutual.

Nonetheless, Moslem argues that his contribution and indemnification are properly asserted against defendants because they "acted wrongfully, resulting in [Vermont Mutual's] denial of the claim and [filing of the] lawsuit [against him]."[53]  While defendants may have acted wrongfully, the doctrines of contribution and indemnification can only be used to recover the monetary losses incurred by a defendant tort-feasor in paying damages to the *plaintiff* in the primary action— *i.e.*, Vermont Mutual.  Accordingly, Moslem's contribution and indemnity claims must be dismissed.[54]

### D.    Breach of Contract Claim

Moslem alleges that he had an implied contract with defendants, and that they breached "their duty by failing to provide correct information to Vermont

---

[53]    Pl. Mem. at 13.

[54]    *See, e.g., Trump Village Section 3, Inc.*, 307 A.D.2d at 895-96 (dismissing indemnity claim by codefendants who failed to establish that the plaintiff sought to hold them vicariously liable for duties owed by another party, "because [the other party's] duties to the plaintiff were completely independent of the duties owed by the codefendants"); N.Y. C.P.L.R. § 1401 (1997) (noting that contribution is only available between "two or more persons who are subject to liability for *damages for the same personal injury, injury to property or wrongful death*, against defendants") (emphasis added)).

18

[Mutual]."[55] Even assuming, *arguendo*, that such a contract existed, however, defendants fully complied with their legal obligations to Moslem. "[T]he law is reasonably settled . . . that insurance agents have a common-law duty to obtain requested coverage for their clients within a reasonable time or inform the client of the inability to do so; however, they have no continuing duty to advise, guide or direct a client to obtain additional coverage."[56]   In other words, "an insurance broker, in his capacity as an insurance broker, may be sued only for failing to do what he is required to do" — *i.e.*, procure insurance.[57] Here, defendants satisfied any alleged duty to Moslem by obtaining the Vermont Mutual Policy on his behalf and in accord with his specifications.  To the extent that Moslem suffered damages because Vermont Mutual would not compensate him for property damage under the policy, his injury is directly traceable to his own independent conduct in

---

[55]     *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y.*, 375 F.3d 168, 177 (2d Cir. 2004) (quotation marks omitted) ("To make out a breach of contract claim under New York law plaintiffs must show "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.").

[56]     *Murphy v. Kuhn*, 90 N.Y.2d 266, 270 (1997).  *Accord Blonsky v. Allstate Ins. Co.*, 128 Misc.2d 981, 983 (Sup. Ct. N.Y. Co. 1985) ("Nothing in the foregoing cases or analysis leads this court to conclude that an insurance agent owes a continuing duty to advise, guide or direct an insured's coverage after a broker has complied with his obligation to obtain insurance coverage on behalf of an insured.").

[57]     *Blonsky*, 128 Misc.2d at 983.

19

signing the application.

## V.   CONCLUSION

For all the reasons discussed above, Moslem cannot sustain any of his claims against defendants, and defendants' motion for summary judgment is granted in its entirety.  The Clerk of the Court is directed to close this motion [Docket No. 31] and this third-party action.   A conference is scheduled for March 16, 2011 at 4:00 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            February 24, 2011

20

## - Appearances -

**For Plaintiff:**

James William Borkowski, Esq.
Keane & Beane, P.C.
445 Hamilton Avenue
15th Floor
White Plains, NY 10601
(914) 946-4777

**For Third-Party Plaintiff:**

Joseph Allan Churgin, Esq.
Savad, Churgin
55 Old Turnpike Road Suite 209
Nanuet, NY 10954
(845) 624-3820

**For Third-Party Defendants:**

Nancy Quinn Koba, Esq.
Alice Leslie Brodie, Esq.
Wilson, Elser, Moskowitz, Edelman & Dicker LLP
3 Gannett Drive
White Plains, NY 10604
(914) 323-7000